COLWELL vs. THE MAY'S LANDING WATER POWER COMPANY.

1. An act which authorizes the owner of a mill dam "to raise the dam and water works" to the height of the natural surface of the water, at the line of his lands, will be construed to authorize raising the water in the dam to that height, and not to authorize the raising of the structure of the dam, by which the water would be made to flow back upon the lands of the adjoining proprietor.

2. Where the words of an act admit of two meanings, one of which would make the act unconstitutional, and the other not, it will be held that the legislature intended to use them in the sense which would be in accordance with the constitution.

3 The word "dam" is sometimes used to mean the water in the mill pond, as well as in its natural and proper signification of the structure by which that water is retained.

4. The grant by a superior land owner, of the right to maintain a dam

X *

Colwell *v.* May's Landing Water Power Company.

which causes his land to be overflowed at its present height, with a proviso that nothing in the grant contained should be construed to authorize the raising of the dam, is not a contract by the grantee that he will not raise the dam.

5. A statute which authorizes the raising of a dam so as to overflow lands to a greater height, when that height exceeds the limit prescribed by the grant under which the first dam overflowed them, is unconstitutional, if it does not provide compensation for such additional overflow. But such raising is not such taking of the lands which are already occupied by the water, nor such an irreparable injury, as will authorize the interference of this court by injunction.

This cause was argued on an order to show cause why an injunction should not be granted.

*Mr. Carpenter* and *Mr. Browning,* for complainant.

*Mr. P. L. Voorhees* and *Mr. Bradley,* for defendant.

THE CHANCELLOR.

The application is for an injunction to restrain the defendants from raising their dam across the Great Egg Harbor river, at May's Landing, in the county of Atlantic. That river is not navigable above the dam, which was erected by Jeremiah Stull, by authority of an act of the legislature, approved March 4th, 1846. The complainant owns a suitable site for a mill dam and water power, on said river, at a point one hundred and ninety chains, in a direct line, above the dam of the defendants, and owns the lands on both sides of the river above that point, so as to have the right to erect a dam and overflow them. The fall of the river at this point, which he designates as his mill site, would be eleven feet.

The defendants, Wood, R. D. Green, and G. R. Green, with two other persons, were, by an act approved April 3d, 1867, incorporated by the name of The May's Landing Water Power Company, and that corporation is the other defendant.

The defendants were authorized by their charter " to raise

the dam at May's Landing, and the water works connected therewith, to the height of the natural surface of the water in the river, at a distance of one hundred and ninety chains, in a straight line, above said dam, and to raise the dam to a corresponding height." The natural surface of the water at the point where the complainant has, or claims to have, his mill site, is thus made the limit to which the defendants are authorized to raise the dam, and water works connected with it.

The old Stull dam, it is alleged by the complainant, raises the water at his mill site within ninety-seven hundredths of a foot of its natural level. He charges that the defendants intend to raise their dam four feet above its former height, by which the water at his mill site will be raised more than three feet above its natural level, and the value of his mill site greatly impaired, or entirely destroyed.

The complainant owns a tract of several acres, which was overflowed by the back water, caused by the dam as originally erected by Stull. In August, 1856, by deed, he agreed with Nixon, who then owned the dam, that he and his representatives might maintain the dam, and overflow his lands, with a proviso that nothing therein contained should be construed to authorize the increase of the head of water beyond the capacity of the dam as then constructed.

The act of 1846, and the charter of the defendants, both provided for the assessment and payment of damages for lands overflowed by the erection or raising of the dam, before the water should be raised, unless the use or purchase of the land had been agreed for with the owners. But neither act authorized the taking of any water power, or the assessment of damages, or any compensation for any water power taken or injured by the raising of the water.

The defendants have not caused any appraisement of the damages to the land of the complainant, situate below his mill site, and already overflowed, to be made or tendered; and he contends that the proviso in the grant to Nixon, of the right to overflow, is a condition, the breach of which for-

feits the grant, and renders a new agreement or condemnation necessary before the water can be raised any higher on these lands, and that it was also a contract not to raise the water higher than it then was.

The complainant also contends that the enterprise of the defendant is a private enterprise; and that property taken for it is in no sense taken for public use, and that it cannot be taken by exercise of the power of eminent domain.

The defendants, by their answer, deny that they intend to raise their dam and water works above the natural surface of the water in the river, at the point one hundred and ninety chains above the dam, in a straight line, and that they have done anything for the purpose of raising it higher than that level. They admit that they intend to raise it to that level, but not until they have acquired the right to overflow all additional lands overflowed by such raising, in the manner authorized by law.

The first, and principal question in the cause, regards the flowing back of the water beyond the complainant's mill site, so as to injure the value of the water power that belongs to him as the owner of the adjacent land. His right begins at the distance of one hundred and ninety chains, in a direct line, from the Stull dam. He is entitled to have the water pass from his land at this point at its natural level, without being raised or obstructed by any artificial change by erections below. The charter of the defendants grants them the right to raise their dam and water works to that level. The object of this limitation evidently was not to authorize any infringement upon rights beyond that point, whether upon compensation, or otherwise; no compensation is provided for injury to water power. The act must be construed so as to authorize the raising of the water in the dam or pond, at that point, to its natural level; such is evidently the intention from the whole act taken together. The word dam is used in two different senses. It properly means the work or structure, raised to obstruct the flow of the water in a river; but by a well settled usage, it is often applied to designate the pond of

water created by this obstruction. The word is used in this conventional sense in some statutes. The road act so uses it. And it is evidently used in this sense when it first appears in the sentence, giving power to raise "the dam and water works" to the height mentioned, whilst, in the same sentence, it is afterwards twice used in its proper meaning to signify the structure that ponds back the water. The only authority to flow back water is in the power "to raise the dam and water works." If it does not here mean the pond, there is no authority to raise the height of the water; its association with the words "water works," here inartificially used, would give it the same construction, as they were evidently brought in to refer to the water above the dam. The last clause of the sentence, the words "to raise the dam to a corresponding height," can have no significance, if the word in the first clause is used in its proper sense to signify the structure; but the other construction harmonizes the whole, and gives to each part its proper effect. "A corresponding height" does not mean "the same height," but a height of the *dam or structure* that will raise the *dam or water* to the prescribed height at the one hundred and ninety chain point. If the dam or structure was raised itself to the prescribed height, it must necessarily raise the level of the water at the mill site, more than two miles above it, higher than the natural level of the water there, and throw back the water upon the complainant. As the act provides no compensation for this injury, and would therefore be clearly against the constitution, independent of the question if this is a public use, this construction will not be given. It is a principle of construction, that if an act admits of two constructions, one of which will render it unconstitutional and the other not, such construction shall be given to it as will make it in accordance with the constitution; for it must be presumed that the legislature did not intend to violate the constitution.

The counsel for both parties very properly agree, that the natural surface of the water means the surface at the ordinary height of the water, without regard to freshets or

droughts. If this is the correct construction of this act, there is nothing in it of which the complainant has any right to complain as regards his mill site. The defendants do not, in their answer, claim any right exceeding that construction, and disclaim all intention of raising their dam or water works higher than the prescribed height. There is nothing in the proof annexed to the bill, that shows any intention to raise the water higher, that is not fully met by these denials in the answer. If the defendants at any time, contrary to their declared intention, attempt to raise the water at the complainant's mill site higher than warranted by the act, by this construction, he may then apply for an injunction.

The grant to Nixon does not amount to a contract on his part, that he, or his representatives, will not raise the water higher than it then was, as ingeniously contended for on behalf of the defendants. It is only a proviso, or rather, what Lord Coke calls a *protestation*, the exclusion of a conclusion. The words clearly show it. "Nothing, however, shall be construed to authorize" raising the dam. It is neither a contract nor a condition, but a precaution, providing against any extended construction of the grant.

This grant, clearly, with this proviso, does not authorize raising the water over these lands. I think it would not without the proviso. The injury complained of to these drowned lands, already overflowed by consent of the owners, is, that the water will be raised a few inches, or perhaps a few feet upon them without the consent of the owner. If the act, so far as it authorizes the overflowing of lands without the owner's consent, is unconstitutional; or is so because it does not provide any compensation for raising higher the water on lands overflowed by the first dam; or if it sufficiently appears that the defendants intend to raise the water without first making compensation, yet, it does not appear to me to be a proper case for interference by preliminary injunction. The injury is not great or irreparable; on the contrary, it is so small as to be hardly appreciable. There is a class of cases where this court will interfere by

injunction, in which the injury is neither great nor irreparable, and this case approaches very near that class. Where a corporation attempts to appropriate and enter upon private property for its properly authorized uses, without first making compensation, as required by the constitution, this court will always prevent the ousting of the owner; they will not put him to his remedy at law, against the corporation, but will protect him in his possession until the compensation has been paid. But in this case the land has been taken, and is in the possession of the defendants. The complainant can bring an action at law for his damages, and to have his right settled; and the question is a proper one to be settled in the courts of law. But wherever the cause may be finally settled, this is not a proper case for interference by preliminary injunction.

The Injunction must be denied.